UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
KATHERINE CLAUDIA PAREDES
SANGUINETI,

                           Plaintiff,                   15-cv-3159 (PKC)

       -against-                     MEMORANDUM
                                                       AND ORDER

ROBERT ANDREAS BOQVIST,

                        Defendant.
-------------------------------------------------------------x

CASTEL, U.S.D.J.

         Petitioner Katherine Claudia Paredes Sanguineti filed a petition seeking the return

of her son, BAB, to Canada pursuant to the Hague Convention on the Civil Aspects of

International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89 ("Hague

Convention") and the International Child Abduction Remedies Act, 22 U.S.C. §§ 9001 et seq.

("ICARA").[1]  After a five-day evidentiary hearing, the Court granted the petition.  Respondent

did not appeal, and after 30 days, counsel for petitioner moved for attorney's fees and other

expenses, seeking a total amount of $195,291.80.  Respondent Boqvist opposes this motion.  For

the reasons stated below, petitioner's motion for attorney's fees (Dkt. No. 55) is granted in part

and denied in part.

LEGAL STANDARD

         While the Hague Convention permits judicial authorities to award necessary

expenses to a prevailing petitioner, Hague Convention, art. 26, ICARA provides that a court

---

[1] At the time of this Court's July 24, 2015 Memorandum and Order, ICARA was codified at 42 U.S.C. §§ 11601-11610, but has since been transferred to 22 U.S.C. §§ 9001-9011.

"shall" award such expenses, unless the respondent establishes that an award "would be clearly inappropriate." 22 U.S.C. § 9007. In full, ICARA's fee-shifting provision provides:

> Any court ordering the return of a child pursuant to an action brought under section 9003 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

Id. The district court "is responsible in the first instance for determining what costs, if any, should be assessed against [respondent]." Hollis v. O'Driscoll, 739 F.3d 108, 113 (2d Cir. 2014) (citing Ozaltin v. Ozaltin, 708 F.3d 355, 377 (2d Cir. 2013)).

The purpose of ICARA's fee-shifting provision is "to restore the applicant to the financial position he or she would have been in had there been no removal or retention" and "to deter such conduct from happening in the first place." Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10494–501, 10511 (Mar. 26, 1986). There is a presumption in favor of awarding necessary costs to a prevailing petitioner in a return action, and "[a]bsent any statutory guidance to the contrary, the appropriateness of such costs depends on the same general standards that apply when 'attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion.'" Ozaltin, 708 F.3d at 375 (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994)). "'There is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised in light of the [relevant] considerations.'" Id. (quoting Fogerty, 510 U.S. at 534).

"[T]he court . . . has the obligation to determine whether the requested fees and costs were 'necessary' to secure the child[ ]'s return." Aldinger v. Segler, 157 F. App'x 317, 318 (1st Cir. 2005) (per curiam). The burden of proving that costs are "necessary" falls upon the petitioner. Guaragno v. Guaragno, No. 09 cv 187 (RO) (RKR), 2010 WL 5564628, at *1 (N.D.

Tex. Oct. 19, 2010), <u>report and recommendation adopted</u>, 2011 WL 108946 (N.D. Tex. Jan. 11, 2011).

DISCUSSION

I.      Attorney's Fees

            Petitioner's counsel, who is a solo practitioner, seeks attorney's fees of $186,152.10, which she divided into two categories: 450.4 hours at $400 per hour for attorney services,[2] and 44.9 hours at $129 per hour for what she described as "Secretarial and Paralegal Services."  (Paredes Decl., Ex. C; Paredes Reply Decl., Ex. A.)

            In return cases under the Hague Convention, the "'lodestar' approach is the proper method for determining the amount of reasonable attorney's fees."  <u>Knigge v. Corvese</u>, No. 01 cv 5743 (DLC), 2001 WL 883644, at *1 (S.D.N.Y. Aug. 6, 2001) (quoting <u>Distler v. Distler</u>, 26 F. Supp. 2d 723, 727 (D.N.J. 1998)); <u>see also</u> <u>Norinder v. Fuentes</u>, 657 F.3d 526, 536 (7th Cir. 2011); <u>Salazar v. Maimon</u>, 750 F.3d 514, 523 (5th Cir. 2014).  "Both [the Second Circuit] and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'"  <u>Millea v. Metro–North R. Co.</u>, 658 F.3d 154, 166 (2d Cir. 2011) (quoting <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany and Albany Cnty. Bd. of Elections</u>, 522 F.3d 182, 183 (2d Cir. 2008)).

            In calculating the lodestar, or "presumptively reasonable fee," the district court must first determine the reasonable hourly rate for the attorney's work, which is the "rate a paying client would be willing to pay."  <u>Arbor Hill</u>, 522 F.3d at 190.  As a starting point in determining the reasonable hourly rate, the court should consider the "fees that would be charged

---

[2] Petitioner also seeks $200 for an initial one-hour consultation.  Respondent does not dispute the charge for this consultation, and the Court finds it to be reasonable.

for similar work by attorneys of like skill in the area." <u>Cohen v. W. Haven Bd. of Police</u> <u>Comm'rs</u>, 638 F.2d 496, 506 (2d Cir. 1980); <u>see also</u> <u>Gierlinger v. Gleason</u>, 160 F.3d 858, 882 (2d Cir.1998) (holding that the reasonable hourly rates used to calculate the lodestar are "the market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.") (internal quotation marks omitted). "[C]onsiderations concerning the quality of a prevailing party's counsel's representation normally are reflected in the reasonable hourly rate." <u>Perdue v. Kenny A. ex rel. Winn</u>, 559 U.S. 542, 553 (2010).  The court should also consider "*all* of the case-specific variables that . . . courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate," including the factors outlined in <u>Johnson v. Ga. Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir. 1974), <u>abrogated on other grounds by</u> <u>Blanchard v. Bergeron</u>, 489 U.S. 87, 92–93, 96 (1989).[3]  <u>Arbor Hill</u>, 522 F.3d at 190 (emphasis in original).  A reasonable client is also expected to want "to spend the minimum necessary to litigate the case effectively." <u>Id.</u>

 a. Reasonable Hourly Rate

  i. <u>Hourly Rate in Petitioner's Fee Agreement</u>

 An initial point of contention relates to Kohtz's hourly billing rate.  Under petitioner's fee agreement with Kohtz, Kohtz's hourly billing rate is $250.00 per hour.  (Kohtz Affirmation ¶ 3.)  However, Kohtz contends that her reasonable hourly rate is actually $400.00 per hour, and that she charged petitioner a reduced rate due to petitioner's exigent circumstances.

---

[3] "The twelve Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." <u>Arbor Hill</u>, 522 F.3d at 187 n. 3 (citing <u>Johnson</u>, 488 F.2d at 717–19).

(Id.)  Both petitioner and Kohtz state that they had agreed that if petitioner were to prevail in the present action, Kohtz would seek fees and costs at her regular hourly rate of $400.00 per hour. (Id.; Paredes Decl. ¶ 4.)  Respondent argues that petitioner's fee agreement setting Kohtz's hourly rate at $250.00 per hour effectively prevents petitioner from seeking a higher rate now, and that any award of fees at a rate above $250.00 would be punitive.  (Resp't Opp'n Br. 5-6.)

Even when a specific hourly rate is included in a fee agreement, a prevailing party's attorney may seek fees at the market rate for similar services by lawyers of reasonably comparable skill, experience, and reputation.  Reiter v. MTA New York City Transit Auth., 457 F.3d 224, 232-33 (2d Cir. 2006); Getty Petroleum Corp. v. Bartco Petroleum Corp., 858 F.2d 103, 114 (2d Cir. 1988).  Awarding attorney's fees at a higher rate than what was provided for in a fee agreement does not confer a benefit onto a prevailing party, as respondent suggests; rather, the benefit is conferred on the prevailing party's attorney, and holding otherwise "would result in a windfall to the . . . [respondent] as wrongdoer[], who would pay less."  Getty Petroleum, 858 F.2d at 114.

In Reiter v. MTA New York City Transit Authority, the Second Circuit held that public policy considerations dictated that the courts "should not punish an 'under-charging' civil rights attorney."  457 F.3d at 233.  There, the Magistrate Judge found that $200.00 per hour was a reasonable hourly rate for the prevailing party's attorney based on the fee agreement. However, the Circuit remanded the case, holding that the Magistrate Judge failed to take into account that "Reiter's attorneys set the retainer rate because, in part, they were offering a discount to a plaintiff in a civil rights case."  Id.  Similarly here, the Court must take into account the circumstances under which petitioner and her attorney arranged their fee agreement. Petitioner sought an attorney for two months to no avail.  When she finally contacted Kohtz, she

requested that Kohtz represent her pro bono.  (Paredes Decl. ¶ 4.)  However, Kohtz explained that as a sole practitioner and having already devoted more than 50 hours to pro bono work in 2015, she could not afford to bear the entire cost of the case.  (Kohtz Affirmation ¶ 3.)  Kohtz agreed to represent her at a reduced rate of $250.00, which petitioner promised to pay to the best of her ability.  To date, petitioner has only paid Kohtz approximately $26,975.00, a fraction of what she owes, even at Kohtz's discounted rate.  (Kohtz Affirmation ¶ 7.)  Despite Kohtz's attempt throughout the length of the dispute to secure pro bono counsel for petitioner, she was unable to do so.  (Kohtz Affirmation ¶ 3.)  Considering the circumstances of the case, as well as the strong public policy interest in ensuring parents have adequate representation to aid them in the return of wrongfully retained children, see 22 U.S.C. § 9001, the fee agreement is not controlling.  Instead, Kohtz's reasonable hourly rate shall be set in the same way that attorneys' rates are typically set in such cases: by determining the rate a paying client would be willing to pay, and taking account all relevant factors, including "the current market rate in the Southern District of New York . . . for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Reiter, 457 F.3d at 233.

Respondent argues that petitioner's fee agreement is unethical in that it provides that Kohtz will pay the petitioner any fees awarded in excess of her bill.  (Resp't Opp'n Br. 3.)  Respondent bases his argument on paragraph 21 of petitioner's fee agreement, which states that "the [petitioner] will be given a credit for any amounts received from the moneyed spouse and any excess amounts above the total bill will be refunded to the [petitioner] after the Attorney's final bill and disbursements are paid."  (Paredes Decl., Ex. A. ¶ 21.)  However, this clause cannot be reasonably construed as conferring a windfall onto the petitioner.  Contractually, petitioner would be entitled to a refund of the fees under the retainer agreement only up to the amount that

petitioner has already paid her attorney.  The statute expressly provides for "the respondent to pay necessary expenses incurred by or on behalf of the petitioner . . . ."  22 U.S.C. § 9007. Petitioner is the intended beneficiary of the fee-shifting provision.  No public policy is offended by paragraph 21 of the fee agreement.  Therefore, respondent's argument is meritless.

      ii.  <u>Reasonable Hourly Rate</u>

Kohtz graduated from law school in 2001 and began her own practice focusing on family law and international family law in 2004.  (Kohtz Affirmation, Ex. 1A.)  She has negotiated and litigated Hague Convention matters only since 2007.  (Kohtz Affirmation ¶ 8; Kohtz Reply Affirmation ¶ 8.)  While the present case is not Kohtz's first Hague Convention case, it is the first Hague Convention case that she litigated to conclusion in federal court. (Kohtz Reply Affirmation ¶ 8.)  Furthermore, Kohtz represented during the hearing that the present case was her "first time in federal court."  (Tr. 129.)  Kohtz does not indicate how many Hague Convention matters she has worked, nor does she indicate her experience litigating in state or federal court.  Kohtz was a conscientious and passionate advocate for her client's cause. While her lack of federal trial experience was evident,[4] she performed well enough to succeed over vigorous and competent advocacy for the respondent.

Kohtz claims that her fee of $400.00 per hour is justified based on the fees that other attorneys in the field charge.  Kohtz indicates that Jeremy D. Morley, an attorney in the field, receives $600 per hour for his time.  (Paredes Reply Decl., Ex. B.)  However, Kohtz does not specify whether she has the same level of experience as Mr. Morley.  A review of his credentials indicate, at the very least, that he has written a treatise on international family law practice and is the author of an international family law publication for the American Bar

---

[4] Self-explanatory examples from the hearing include the following: Tr. 96-99, 106, 118-119, 120, 124-126, 303, 424, 427, 454-55, 478-49, 482, 488 491, 509-10, & 530.

Association.  See Jeremy D. Morley, International Family Law Practice (2015); James D.

Morley, The Hague Abduction Convention: Practical Issues and Procedures for Family Lawyers

(2012).  Kohtz's reliance on In re One Infant Child, is also misplaced, as petitioner's counsel in

that case had 37 years of experience in matrimonial and family law.  No. 12 cv 7797 (PKC),

2014 WL 704037, at *3 (S.D.N.Y. Feb. 20, 2014) rev'd sub nom. Souratgar v. Lee Jen Fair, __

F.3d __, 2016 WL 1168733 (2d Cir. Mar. 25, 2016).

   The Court recognizes and considers that, as a solo practitioner, Kohtz's

participation in this case necessarily precluded her from employment in other cases.  In light of

the factors cited herein and in petitioner's submissions, including Kohtz's experience, her quality

of work, and previous awards in similar cases, the Court concludes that a rate of $335.00 per

hour is reasonable on this record.  Knigge, 2001 WL 883644, at *3 (holding that petitioner's

attorney, who was 13 years out of law school and worked on several Hague Convention cases,

was entitled to a reasonable hourly rate of $200.00 per hour).

   Kohtz also seeks $129 per hour for work completed by her that constituted

secretarial and paralegal work.  The Court will approve this request as reasonable in context.

Andrews v. City of New York, 118 F. Supp. 3d 630, 643 (S.D.N.Y. 2015) (finding that a

reasonable hourly rate for paralegal work is $100.00 per hour); Gonzalez v. Scalinatella, Inc.,

112 F. Supp. 3d 5, 29 (S.D.N.Y. 2015) (awarding $100.00-$105.00 per hour for paralegals).

   b. Reasonable Hours

   Kohtz has submitted time records in support of her claim for 451.4 hours of

attorney time and 44.9 hours of non-attorney time.  This includes time spent on the present

motion.  As an initial matter, the Court notes that Kohtz's representations in her briefs and her

time records are inconsistent.  According to Kohtz's brief, she billed a total of 453.04 hours for

attorney time.  (Pet'r Reply Br. 7.)  Considering that Kohtz bills in increments of 0.1 (Paredes Decl., Ex. A ¶ 15), her representation is certainly erroneous.  Having reviewed Kohtz's actual time records (Paredes Decl., Ex. C; Paredes Reply Decl., Ex. A), the Court concludes that the hours designated in those records, rather than in her brief, correctly reflect Kohtz's time on the matter.

With respect to attorney time, a number of Kohtz's entries reflect excessive time spent.  On May 15, 2015, Kohtz billed 18.6 hours as attorney time drafting pretrial material and preparing for trial, as well as an additional 8.0 hours as non-attorney time on secretarial and paralegal services, a total of 26.6 hours.  (Paredes Decl., Ex. C.)  The Court generously assumes this was mere inadvertence.  The Court reduces Kohtz's attorney time and non-attorney time for May 15, 2015 to 12 and 4 hours, respectively.  In addition, Kohtz spent a total of approximately 69 hours on the present motion, which the Court finds excessive in light of the issues presented in the case.  The Court reduces the hours awarded on the fee application to 40 hours.

Kohtz also advised petitioner on issues that are not related to the present case.  These matters include billing attorney time for advice related to a potential prenuptial agreement, marriage and immigration issues.  Indeed, Kohtz readily admits that she advised not only petitioner on these issues, but both parties during their short-lived reconciliation in May and June 2015.  (Kohtz Reply Affirmation ¶ 12 ("Petitioner asked me to give her detailed written answers to the *parties'* immigration questions.").)  Between May 22, 2015 and June 29, 2015, Kohtz billed a total of 13.7 hours to a mix of these unrelated issues and properly-billed settlement discussions.  To account for the unrelated issues on which Kohtz advised petitioner, the Court reduces these particular entries to 6 total hours.  In light of these cuts, the Court deems the reasonable amount of attorney hours to be 408.1 hours.

With respect to non-attorney time, a review of Kohtz's billing statements indicate that her time spent on paralegal and secretarial duties was reasonable and necessary. Kohtz billed her time to non-attorney work sparingly, and only did so to complete such tasks as preparing exhibits for trial and finalizing documents to be e-filed. After deducting 4.0 hours from petitioner's total for her May 15, 2015 non-attorney charge, the Court awards 40.9 hours of non-attorney time.

In summary, the Court finds that petitioner is entitled to $142,189.60 in attorney's fees ($136,713.50 for attorney time, $5,276.10 for non-attorney time, and $200 for her initial one-hour consultation).

## II.     Attorney Costs

Petitioner's counsel also seeks reimbursement of $1,164.67 in costs, including $225.00 for copies and $450.00 in filing fees. (Paredes Decl., Ex. C.) The Court finds these costs to be reasonable.

## III.    Petitioner's Out-of-Pocket Expenses

In addition to attorney's fees and costs, petitioner seeks a total sum of Canadian Dollars ("CAD") 10,633.34 for out-of-pocket expenses incurred as a result of the proceedings before this Court. (Paredes Decl. ¶ 2.) ICARA provides that the respondent shall pay a prevailing petitioner necessary expenses, including "foster home or other care during the course of proceedings in the action, and transportation costs *related to the return of the child*." 22 U.S.C. § 9007 (emphasis added). Petitioner has failed to establish that the entire sum was reasonable and necessary for the return of her child. Paredes's expenses are broken down into subcategories, each of which the Court will address separately.

a.   Attorney Consultation Fees

Petitioner seeks a total of CAD 1,242 for consultation fees from four different attorneys, one of which is her current attorney, Kohtz.  (Paredes Decl., Ex. D.)  However, Petitioner provides scant documentation of the nature of these consultations, the date they occurred, or how petitioner paid for them.  One receipt shows that petitioner consulted Thi Bao Ngoc Nguyen on January 19, 2015.  (Paredes Reply Decl., Ex. B at 3.)  But the receipt is in French, and does not indicate whether the consultation related to the current matter.  (Id.)  Even if it did, however, the consultation occurred many months before the initiation of the current action.  In another undated letter, attorney Jeremy D. Morley indicates that his firm was retained to review petitioner's "international family law situation," that the firm will charge $500 for up to one hour of reviewing the case, and additional sums if petitioner agrees.  (Id. at 2.)  Although petitioner contends that Morley charged her CAD 550.00, the letter she provided is not a bill for services rendered, and there is no indication that Morley ever charged petitioner.  Furthermore, petitioner explicitly writes on the letter that her sister "agreed to pay for the consultation."  (Id.)  A review of petitioner's credit card statements shed no additional light on when these consultations occurred, with the exception of a charge of CAD 129.74 by the Nowokunski Law Firm, which may or may not be related to the CAD 250.00 consultation charge by "Nowoski."  Lastly, petitioner does not explain how a consultation charge of CAD 258 by her current lawyer is not already accounted for in her request for attorney's fees.  A review of Kohtz's invoices show a consultation charge of $206.00 on April 20, 2015.  (Paredes Decl., Ex. C.)

Besides the dearth of details provided to justify these consultation fees, petitioner has not shown that the work done by these attorney's was not duplicative of the work that was ultimately done by Kohtz.  Aldinger, 338 F. Supp. 2d at 298 ("While [petitioner] should not be

penalized for his choice of counsel, neither should [respondent] bear the burden of multiple representations."), aff'd, 157 F. App'x 317 (1st Cir. 2005).  Accordingly, the request for these costs is denied.

     b.  Mediation Services

       Petitioner also seeks a total of CAD 500.00 for mediation services, CAD 300 of which was for mediations occurring on February 27, March 6 and March 11, 2015, and an additional CAD 200.00 for an undated "couple therapy."  (Paredes Decl., Ex. D.)  These services predate the litigation in this Court by more than a month, and petitioner does not indicate how or whether they related to the resolution of the litigation.  During the trial, the parties indicated that they participated in mediation sessions to develop a "fair parenting schedule."  (Tr. 527.)  The fact that petitioner groups her mediation sessions with "couple therapy," leads the Court to the conclusion that the sessions were related to the parties' attempted reconciliation, rather than the present litigation.  The request for reimbursement of these costs is denied.

     c.  Translations

       Petitioner also seeks reimbursement of a total of CAD 269.50 for translation services by Fox Translations LTD.  (Paredes Decl., Ex. D.)  The services were rendered on June 11, 2015 and June 23, 2015.  Petitioner contends that she retained Fox Translations to translate documents that were in French, and that some of those documents were introduced at trial.  (Paredes Reply Decl. ¶ 10.)  Petitioner is entitled to CAD 218.65 for these translation costs, which is the amount supported by her submitted credit card receipts.  (Paredes Reply Decl., Ex. B.)

d.   Trial Transcripts

Petitioner requests reimbursement of CAD 1,866.34 for trial transcripts.  (Paredes Decl., Ex. D.)  The Court required the parties to obtain copies of the trial transcript in order to reference them in post-trial briefing.  (Tr. 342-43.)  The Court finds these costs reasonable and necessary to the return of BAB.

e.   Child Care for CFPC

Petitioner also requests CAD 786 for the care of CFPC, petitioner's child not the subject of the current action.  (Paredes Decl., Ex. D.)  Specifically, petitioner seeks reimbursement of CAD 786 for airfare for her Aunt Monica, and an additional CAD 18 for unexplained expenses related to CFPC's care.  Petitioner contends that she had to fly Aunt Monica from Peru to Quebec to care for CFPC while petitioner was in New York for the hearing. (Paredes Decl. ¶ 7.)  However, the petitioner fails to explain why flying Aunt Monica to Quebec was necessary to BAB's return.  Nor can the Court find any cases in which a court has reimbursed a petitioner for expenses related to the care of children not at issue in the case. Furthermore, even if childcare for CFPC was necessary to BAB's return, trial testimony elucidates less costly alternatives.  At trial, petitioner's sister, who lives very close to petitioner in Quebec, testified that she and petitioner "always helped each other with each other's children," and that she "looked after [BAB] on many occasions.  (Tr. 119.)  In light of these circumstances, petitioner has not proved that Aunt Monica was necessary to BAB's return, and consequently, the Court denies reimbursement of these expenses.

f.   Medical Care for BAB

Petitioner requests CAD 103.54 for medical costs that she accrued on behalf of BAB in New York.  (Paredes Decl., Ex. D.)  The charge relates to a doctor's visit at Our

Neighborhood Medical in Sunnyside, Queens.  (Id.)  Petitioner contends that this charge was incurred solely as a result of respondent's actions, since BAB would have received free medical care had he been permitted to return to Canada.  (Paredes Decl. ¶ 7.)  Petitioner, however, fails to detail what the nature of these charges were, and whether they were necessary for BAB's return. Therefore, reimbursement of these expenses is denied.

g.   Travel, Food and Lodging Expenses

Petitioner requests CAD 4,040 for expenses related to food and lodging during the course of the litigation, and CAD 2,611.96 in travel expenses.  (Paredes Decl., Ex. D.) Petitioner's expenses in these categories overlap so the Court reviews them together.

Many of Paredes's expenses are so generalized that the Court cannot determine whether the purchases are justified and reasonable.  For example, Paredes's cost statements include (1) multiple purchases at Walmart, each of which is in excess of CAD 50.00, (2) multiple ATM cash withdrawals, and (3) multiple purchases at Carter's, a children's store, totaling more than CAD 130.00.  (Id.)  Petitioner offers no further details regarding these purchases, other than to state that she incurred travel and lodging costs for herself, her aunt and her two children, and was also required to "buy extra clothing and personal items for BAB when he stayed with me in New Jersey." (Paredes Reply Decl. ¶ 9.)  However, petitioner does not indicate why she could not retrieve clothing for BAB from her home in Canada on one of her many trips to and from New York.  Furthermore, petitioner does not explain how purchasing new clothing and personal items for BAB was necessary for his return, and how such purchases would not have occurred regardless of whether he was in New York or in Quebec.

In addition, while petitioner's presence in New York was necessary for the hearing, she does not explain why her multiple trips to New York were reasonable or necessary

for BAB's return.  Therefore, a reduction in petitioner's travel, food, and lodging costs is appropriate.  The Court finds that petitioner's presence in New York was reasonable and necessary for 12 days—the six days in court from May 18 to May 20, 2015, and June 29, 2015 to July 1, 2015, as well as three days preceding each span to prepare for trial.  According to petitioner's statements, her total cost for those 12 days amounts to $588.08.[5]  (Paredes Decl., Ex. D.)  The Court finds this amount to be reasonable.

　　　　　The Court also finds that four round trips to New York would have been sufficient to secure the return of BAB—one trip prior to trial to consult and prepare for trial, one trip at the start of trial on May 18, 2015, one trip at the start of the second half of the trial on June 29, 2015, and one trip in August 2015 to return to Canada with BAB.  For each trip, the Court credits petitioner's testimony that gas and tolls costs approximately $200.00 for a round-trip from New York to her home in Canada.  (Tr. 69-71.)  A review of petitioner's credit card statements confirms this to accurately approximate the costs for each round trip, and the Court concludes that this is reasonable.  Therefore, petitioner is entitled to reimbursement in the amount of $800.00 for travel costs.

*　　　*　　　*

　　　　　In summary, petitioner is entitled to reimbursement for translation services and trial transcripts in the amount of CAD 2,084.99, which converts to $1,563.74.  In addition, petitioner is entitled to $1,388.08 in food, lodging, and travel expenses.  In total, respondent shall pay $2,951.82 to petitioner for out-of-pocket expenses.

---

[5] While petitioner seeks reimbursement in Canadian dollars, the Court relies on petitioner's statement of costs, which shows her expenses in U.S. dollars as well.  (Paredes Decl., Ex. D.)

IV.     Inability to Pay

        Although a prevailing petitioner is presumptively entitled to necessary expenses in cases arising under ICARA, the award is "'subject to a broad caveat denoted by the words, clearly inappropriate.'" Souratgar, __ F.3d __, 2016 WL 1168733, at *6 (quoting Whallon v. Lynn, 356 F.3d 138, 140 (1st Cir. 2004)). The "clearly inappropriate" standard imputes "the equitable nature of cost awards" onto ICARA's fee-shifting provision, and only permits an award of expenses "subject to the application of equitable principles by the district court." Ozaltin, 708 F.3d at 375 (quotations omitted).

        In cases arising under ICARA, "courts have considered the degree to which the petitioner bears responsibility for the circumstances giving rise to the fees and costs associated with a petition." Souratgar, __ F.3d __, 2016 WL 1168733, at *6 (citing cases). In addition, "a respondent's inability to pay an award is a relevant equitable factor for courts to consider in awarding expenses under ICARA." Id. at *8; see also Poliero v. Centenaro, No. 09 cv 2682 (RRM) (CLP), slip op. at 41 (E.D.N.Y. Aug. 17, 2009), ("[R]espondent has established that an award of legal fees and expenses would be clearly inappropriate and unjust here, given that petitioner controls all of the finances, and that respondent has no appreciable assets of her own, is not employed, and lives on the money that petitioner transfers to her bank account."), report and recommendation adopted, 2009 WL 2947193 (E.D.N.Y. Sept. 11, 2009), aff'd, 373 F. App'x 102 (2d Cir. 2010); Rydder v. Rydder, 49 F.3d 369, 373–74 (8th Cir. 1995) (reducing an ICARA award of $18,487.42 to $10,000.00, based on respondent's financial circumstances).

        The Court determined that respondent bears the bulk of responsibility for the circumstances giving rise to the fees and costs associated with the petition. Petitioner repeatedly demanded that respondent return BAB to Quebec in the months leading up to the filing of the

petition in the current action.  Paredes-Sanguineti v. Boqvist, No. 15 cv 3159 (PKC), 2015 WL 4560787, at *14 (S.D.N.Y. July 24, 2015) (citing Tr. 272, 311).  On March 19, 2015, petitioner submitted a request with the Canadian Central Authority to have BAB returned to Quebec under the Hague Convention.  Id.  Despite her attempts to have BAB returned to Quebec amicably, respondent "unilaterally decided to retain BAB in New York."  Id.  The Court found that respondent's retention of BAB was in bad faith and that he deliberately stalled BAB's return to Canada to initiate custody proceedings in New York, which required BAB to reside in the state for six months.  Id.  Absent respondent's deliberate course of action to retain custody of BAB, petitioner would not have accrued the necessary expenses she seeks in this fee application. Therefore, respondent's purposeful actions of retaining BAB in New York weighs in favor of granting an award of expenses to petitioner.

But the Court also notes that petitioner must bear part of the "responsibility for the degree of enmity between [the parties]," which likely led to increased legal costs.  Whallon, 2003 WL 1906174, at *4, aff'd, 356 F.3d 138; see also Silverman v. Silverman, No. 00 cv 2274 (JRT), 2004 WL 2066778, at *4 (D. Minn. Aug. 26, 2004) ("In this case, petitioner bears at least some responsibility for the acrimony between the parties that doubtless led to increased attorney fees.").  Petitioner and respondent had a volatile relationship that predated and extended through the course of the litigation.  Petitioner was not without fault.[6]

Also weighing against an award of necessary expenses is respondent's alleged financial constraints, which he contends warrant a denial or reduction of any fee award.  (Boqvist Decl. ¶¶ 2-3.)  Respondent contends that he only has approximately $12,162.57 in a brokerage

---

[6] In addition to the domestic disputes between the parties, evidence at the hearing showed that on one occasion, petitioner destroyed respondent's clothing, computer, and other belongings.  See, e.g., Tr. 330-32 & Resp't Trial Ex. A.

account, $5,459.42 in his checking account, and $10,717.28 in a 401K account. (<u>Id.</u> ¶ 9.) In contrast, he has substantial debts—including student loan debt, legal fees, and tax liabilities— that far exceed his assets, as well as little incoming income. (<u>Id.</u>) In total, respondent contends that he has a net worth of $603, excluding legal bills. (<u>Id.</u>) Despite respondent's representations, the Court concludes that only a modest reduction in petitioner's award is appropriate. The Court is mindful that "an expenses award that is greater than a respondent's total assets" requires, at the very least "a reasoned explanation." <u>Souratgar</u>, __ F.3d __, 2016 WL 1168733, at *8 n.3. The Court concludes that an award greater than respondent's total assets is justified for the following reasons.

Unlike cases in which courts have reduced an award of necessary expenses based on respondent's limited ability to earn in the future, <u>see, e.g.</u>, <u>Clarke v. Clarke</u>, No. 08 cv 690 (LFS), 2008 WL 5191682, at *3 (E.D. Pa. Dec. 11, 2008), respondent has no such limitations. At trial, respondent testified that he graduated from college in Michigan and was gainfully employed after graduation. (Tr. 339.) He then worked for a financial company in London for several years, before attending Harvard Business School. (Tr. 340.) After receiving an MBA from Harvard, he worked for Lehman Brothers until November 2008. (Tr. 340-41.) Thereafter, he became an entrepreneur with an interest in several companies. (Tr. 341-42.) Respondent's background, education, and work experience all indicate that he has significant earning potential in the future. <u>Escobar Villatoro v. Figueredo</u>, No. 15 cv 1134 (CEH) (TBM), slip op. at 5 (M.D. Fla. Sept. 10, 2015) ("Although Respondent may not have a present ability to pay due to her immigration status barring employment, she is a trained medical doctor with a prospective ability to earn a living and repay the expenses incurred."), <u>report and recommendation adopted</u>, 2015 WL 6150769 (M.D. Fla. Oct. 16, 2015).

While respondent contends that he has few prospects for new jobs, his spending habits suggest otherwise.  Respondent alleges that he had a monthly income of $4,239.76, but that he would not be able to collect that income after December 2015. (Boqvist Decl. ¶ 4.) However, respondent renewed his lease in August 2015, agreeing to pay $4,322.00 per month in rent, more than his then-current income.  (Boqvist Decl., Ex. 7.)  Because respondent's legal bills and other liabilities far exceeded his savings at the time he renewed his lease, respondent must have believed he would soon benefit from other sources of income to pay his rent.  The Court cannot help but share in respondent's optimism based not only on the renewal of his lease, but also on his education and background.

Respondent's claim of hardship is further undercut by his spending patterns.  In addition to more than $4,000 in rent each month, respondent owns a dog, Pastis, which he cares for and which he took on trips to Canada and Sweden.  (Tr. 370-71, 405.)  Respondent also testified that he made multiple trips to Sweden with petitioner, BAB and his dog. (Tr. 333-334, 374.)  In addition, respondent enrolled BAB in a daycare in New York that cost $24,000 per year.  (Tr. 377.)  While the Court would typically not comment on a party's everyday expenses, respondent's spending patterns weigh against a determination that an award of necessary expenses would be "clearly inappropriate."  By respondent's own admission, he spends, at the very least, $7,977 every month on expenses (Boqvist Decl. ¶ 8), which far exceeds his monthly income and far exceeds what is necessary for respondent's day-to-day living expenses.[7]

---

[7] Moreover, exhibits in support of respondent's statements indicates additional income that is unaccounted for in his declaration.  While petitioner's brokerage account shows an overall net loss, his September 2015 statement shows that he contributed $4,500 to the account in September, and a total of $48,362.74 for the year.  (Boqvist Decl., Ex. 9.)  Respondent's explanation of his total monthly income cannot justify how he was able to contribute any money to his brokerage account, let alone $4,500 as late as September 2015.

Respondent cannot, on the one hand, spend far in excess of his monthly income on his living expenses, and then, on the other hand, claim that he is unable to pay an award of necessary expenses to petitioner and her attorney.  A review of the case law in this area reveals that courts have reduced an award of necessary expenses based on a respondent's inability to pay where, for example, the respondent had substantial *necessary* expenses, such as caring for dependents, Silverman, 2004 WL 2066778, at *4, or where petitioner contributed to respondent's poor financial circumstances. Poliero, 2009 WL 2947193, at *22, aff'd, 373 F. App'x 102 (2d Cir. 2010); Aly v. Aden, No. 12 cv 1960 (JRT) (FLN), 2013 WL 593420, at *20 (D. Minn. Feb. 14, 2013).  The Court cannot find any cases that support finding an award of necessary expenses "clearly inappropriate," where respondent's inability to pay was predominantly caused by his own spending far above bare necessities.

Ultimately, the inquiry into whether an award of necessary expenses is "clearly inappropriate" is fact-specific, and the district court must take into account all the equitable circumstances of the case.  See Ozaltin, 708 F.3d at 375.  Here, the Court concludes that respondent's own excessive spending should not serve as a complete bar to petitioner's recovery. Stated another way, the Court concludes that respondent has failed to prove that an award of fees would be "clearly inappropriate" under the circumstances of the case.  Respondent is largely responsible for BAB's retention in New York, a retention that this Court found to be deliberate and in bad faith.  Completely barring an award of petitioner's necessary expenses would serve not only as a stamp of approval on respondent's conduct, but also as a disincentive to attorneys from taking on cases to ensure the return of wrongfully retained children.

The Court credits respondent's claim that he faces some financial constraints, such as his unpaid legal fees and student loan payments.  (Boqvist Decl. ¶ 9.)  Taking into

account respondent's financial circumstances—including his remaining assets, his liabilities, and his ability to earn a substantial income—as well as all the other equitable factors previously discussed, the Court concludes that a reduction in the total fee award is appropriate.  Therefore, the Court reduces the award of attorney's fees by 25% to $106,642.20.  In light of the circumstances previously discussed, the Court is also satisfied that such a reduction will ensure that the award of necessary expenses does not impede respondent from visiting and caring for BAB in the future.  Norinder v. Fuentes, 657 F.3d 526, 536 (7th Cir. 2011) ("At least two courts of appeals have recognized that a fee award in a case under the Convention might be excessive and an abuse of discretion if it prevents the respondent-parent from caring for the child.").  The costs of petitioner's attorney and petitioner's out-of-pocket expenses remain unchanged.

CONCLUSION

         For the reasons stated above, petitioner's motion for attorney's fees (Dkt. No. 55) is granted in part and denied in part.  The Clerk shall enter judgment in favor of petitioner in the total amount of $110,758.69 for the following:

| | |
|---|---|
| Attorney's Fees | $106,642.20 |
| Attorney's Costs | $1,164.67 |
| Petitioner's Out-of-Pocket Expenses | $2,951.82 |

         SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:  New York, New York
         April 14, 2016

- 21 -